# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

|  |  |  |
|---|---|---|
| **ELIAS MORENO, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. B-06-154** |
| | ) | |
| **POVERTY POINT PRODUCE, INC.,** | ) | **JURY TRIAL DEMANDED** |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## PLAINTIFFS' RESPONSE TO THE MOTION OF DEFENDANTS POVERTY POINT PRODUCE, INC. AND JEFFERY BROWN TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, ALTERNATIVELY, TO TRANSFER VENUE

Plaintiffs, ten migrant agricultural workers (hereinafter the "Farmworkers"), submit this response to the motion of Defendants Poverty Point Produce, Inc. and Jeffery Brown (hereinafter the "Grower Defendants") to dismiss for lack of personal jurisdiction and improper venue, or, alternatively, to transfer venue. Based on the argument herein and the Farmworkers' allegations and evidence, the motion should be immediately denied. If the Court does not now deny the motion, the Farmworkers request the opportunity to conduct jurisdictional discovery.

## I.	Introduction

The Farmworkers are migrant agricultural workers from the Rio Grande Valley of South Texas (hereinafter the "Valley") who are suing growers and farm labor contractors for alleged violations of their rights under the Migrant and Seasonal Agricultural Worker Protection Act, 29

*Plaintiffs' Response to Motion to*
*Dismiss or Transfer*

U.S.C. §§ 1801 et seq. ("AWPA"), the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and Louisiana tort law.  The Farmworkers allege that they were hired to work at a sweet potato farm operated by the Grower Defendants in 2005.  The Farmworkers further allege that they were recruited in Texas by the Grower Defendants through their agents, Raul Leal d/b/a Texas Labor Contractors, Jesse Leal, and Piedad Leal (hereinafter the "Contractor Defendants").  The Farmworkers claim that Defendants failed to live up to their promises, in violation of their duties under the AWPA and under the working arrangement that Defendants had made with them.

In summary, this Court has personal jurisdiction over the Grower Defendants because they had the requisite minimum contacts with the forum, including their use of Texas-based agents to recruit and transport the Farmworkers and other Texas residents for employment over multiple years.  Additionally, several of the Farmworkers' claims and injuries arise out of transactions made with the Grower Defendants' agents in Texas.  In light of these facts, the exercise of personal jurisdiction would comport with traditional notions of fair play and substantial justice.  Furthermore, because this Court has personal jurisdiction over the Grower Defendants, venue is proper under the AWPA's special venue provision, 29 U.S.C. § 1854(a).[1]

---

[1] The Farmworkers agree with the Grower Defendants, see Defs.' Mem. Supp. of Mot. to Dismiss or, Alternatively, to Transfer Venue (hereinafter "Defs.' Mem.") at 11–12, that if a court lacks personal jurisdiction over a defendant, venue is also improper.  Under the AWPA's special venue provision, 29 U.S.C. § 1854(a), when a court has personal jurisdiction over the parties, the AWPA case is properly venued in that court. Astorga v. Connleaf, Inc., 962 F. Supp. 93, 95 (W.D. Tex. 1996); Stewart v. Woods, 730 F. Supp. 1096, 1097 (M.D. Fla. 1990).  Because the Grower Defendants' argument that venue is improper is thus wholly dependent on their personal jurisdiction argument, the Farmworkers do not further address the issue of proper venue.

Finally, the Grower Defendants have not carried their heavy evidentiary burden to support their request for a transfer of venue—to the contrary, the wealth of specific evidence produced by the Farmworkers demonstrates that the convenience of the parties and the interest of justice require that this lawsuit remain in this Court.

## II.    Argument: This Court Has Personal Jurisdiction Over the Grower Defendants

### A.    Standard of Review

On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing the court's jurisdiction. Central Freight Lines, Inc. v. APA Transp. Corp., 322 F.3d 376, 380 (5th Cir. 2003). When the district court decides the motion without holding an evidentiary hearing, the plaintiff need only meet the low threshold of establishing a *prima facie* case that jurisdiction exists. Stripling v. Jordan Prod. Co., 234 F.3d 863, 869 & n.8 (5th Cir. 2000). In ruling on the motion, the court may consider affidavits, interrogatories, depositions, and other discovery materials, Jobe v. ATR Mktg., Inc., 87 F.3d 751, 753 (5th Cir. 1996), but it "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts," Stripling, 234 F.3d at 869 (citation and internal quotation marks omitted). Thus, only if the nonresident defendant controverts the allegations in the complaint with evidence must the plaintiff even come forward with evidence of jurisdiction. Sarmiento v. Producer's Gin of Waterproof, Inc., 439 F. Supp. 2d 725, 728, 730 (S.D. Tex. 2006). In contrast, when the court holds an evidentiary hearing, the plaintiff must demonstrate by a preponderance of the evidence that personal jurisdiction exists. See Felch v. Transportes Lar-Mex SA de CV, 92 F.3d 320, 326 (5th Cir. 1996).

### B.   Statement of Relevant Facts[2]

The Grower Defendants,  through their agents the Contractor Defendants, recruited the

Farmworkers in Texas in 2005 for employment in a sweet potato farm in Louisiana.[3] As part of

the Contractor Defendants' recruitment efforts, they placed advertisements in a South Texas

newspaper to recruit workers.[4]   The Farmworkers met with Defendant Raul Leal or his agents in

the Valley, where the Contractor Defendants made promises to the Farmworkers that were not

kept about the number of hours, the type of work, and the number of weeks of work that the

Farmworkers would receive.[5]  At the time of recruitment, the Contractor Defendants gave some

of the Farmworkers a disclosure sheet that contained promises about the work that turned out to

be true—such as that the crop was sweet potatoes, that the work would take place in Louisiana,

that the Farmworkers would work at Defendant Poverty Point Produce, that transportation would

---

[2] This statement of facts conforms to the Stripling standard set forth above, see 234 F.3d at 869, that the uncontroverted allegations of the Farmworkers' complaint be accepted as true and all factual conflicts be resolved in the Farmworkers' favor.

[3] 1st Am. Compl. ¶¶ 22–23, 62.  For reasons stated in Part II.D.1.a infra, the Grower Defendants have come forward with no competent evidence to controvert the Farmworkers' allegation of agency.

[4] Decl. of Oscar Reyes ¶¶ 3–4, Ex. 1 hereto (hereinafter "Reyes Decl."); Decl. of Prisco Noyola ¶ 5, Ex. 2 hereto (hereinafter "Noyola Decl."); Decl. of Margarito Chavez ¶ 3, Ex. 3 hereto (hereinafter "Chavez Decl."); Decl. of Rene Rodriguez ¶¶ 3–4, Ex. 4 hereto (hereinafter "Rodriguez Decl."); Decl. of Elias Moreno ¶¶ 3–4, Ex. 5 hereto (hereinafter "Moreno Decl."); Decl. of Gilberto Garcia ¶¶ 3–4 & Ex. A thereto, Ex. 6 hereto  (hereinafter "Garcia Decl."). Consistent with S.D. Tex. General Order No. 2004-11, the Farmworkers have redacted sensitive personal data identifiers from the evidence submitted with this Response.

[5] 1st Am. Compl.¶ 62; Reyes Decl. ¶ 7; Noyola Decl. ¶ 6; Chavez Decl. ¶¶ 6–8; Rodriguez Decl. ¶¶ 6–7; Moreno Decl. ¶ 8; Garcia Decl. ¶ 5.

*Plaintiffs' Response to Motion to*
*Dismiss or Transfer*                                                                                      Page 4 of  33

be provided to Louisiana but deducted from their pay, and that they would be given housing.[6]

The Contractor Defendants also gave some of the Farmworkers a housing-related disclosure

informing the Farmworkers that anyone who broke the rules regarding the *housing* would be

subject to dismissal by the *employer*, Defendant Poverty Point Produce.[7]  At this time, Defendant

Raul Leal's employees did not have valid certificates of registration with the U.S. Department of

Labor ("USDOL") that authorized them to perform these farm labor contracting activities.[8]  The

written disclosures that the Contractor Defendants provided to the Farmworkers also failed to

disclose all the terms and conditions of employment as required by the AWPA.[9]

The Farmworkers and more than 40 other workers were transported in at least three vans

by the Contractor Defendants or their agents from Texas to Defendant Poverty Point Produce,

Inc.'s farm in Pioneer, Louisiana.[10]  Eight Plaintiffs were transported in Texas under conditions

that violated the safety standards set forth in the AWPA, by a person who did not hold a farm

labor contractor certificate of registration from USDOL, and in a vehicle that was not registered

in connection with a farm labor contractor certificate of registration.[11]

_____

[6] Reyes Decl. ¶¶ 5–6 & Ex. A thereto; Noyola Decl. ¶ 7 & Ex. A thereto; Chavez Decl. ¶¶ 5–6; Rodriguez Decl. ¶¶ 7–8; Moreno Decl. ¶¶ 5–6 & Ex. A thereto; Garcia Decl. ¶¶ 8–9 & Ex. B thereto; see also Affidavit of Raul Leal & Ex. A thereto, Ex. 8 thereto (hereinafter "Leal Aff.")

[7] See Reyes Decl. ¶ 8 & Ex. B thereto; Noyola Decl. ¶ 8 & Ex. C thereto; Rodriguez Decl. ¶ 9; Moreno Decl. ¶ 7 & Ex. B thereto; Garcia Decl. ¶ 10 & Ex. C thereto.

[8] 1st Am. Compl. ¶ 24.

[9] Id. ¶ 33.

[10] See 1st Am. Compl. ¶ 34; Reyes Decl. ¶¶ 11–12; Noyola Decl. ¶¶ 9–10; Chavez Decl. ¶ 11; Rodriguez Decl. ¶ 11; Moreno Decl. ¶¶ 9–11; Garcia Decl ¶ 12.

[11] 1st Am. Compl. ¶¶ 35–37.

*Plaintiffs' Response to Motion to*
*Dismiss or Transfer*                                                                                    Page 5 of  33

Defendant Jeffery Brown is part owner of Defendant Poverty Point Produce and manages its field work.[12]  Defendant Jesse Leal personally gave instructions to the Farmworkers and supervised their work.[13]  Defendant Raul Leal also periodically came to the farm to check on the Farmworkers' work.[14]  The Grower Defendants provided the Farmworkers' housing,[15] but the person to whom the Farmworkers complained about problems with the housing was Defendant Jesse Leal, who himself lived in the housing.[16]  Defendant Jesse Leal also kept track of the Farmworkers' hours while they worked at Poverty Point Produce, and it was he who physically

---

[12] Aff. of Jeffery Alan Brown (hereinafter "Brown Aff.") ¶ 2, which was attached as Ex. 1 to Defs.' Mem.  The Grower Defendants do not deny that Defendant Raul Leal was an agent of Defendant Jeffery Brown, instead stating only that he was not an employee or agent of Defendant Poverty Point Produce.  Id. ¶ 6.  Thus, the Farmworkers' allegations that Jeffery Brown was their employer and that the Contractor Defendants were Defendant Jeffery Brown's agents, 1st Am. Compl. ¶¶ 20, 62, are uncontroverted allegations sufficient to establish a *prima facie* case for personal jurisdiction over Defendant Jeffery Brown.  His affidavit also provides no evidence relating to Contractor Defendants Jesse Leal and Piedad Leal, so, under the same standard, the allegations of the Farmworkers' complaint relating to the Grower Defendants' agency relationship with these two Defendants are sufficient to establish personal jurisdiction over the Grower Defendants.  See Stripling, 234 F.3d at 869.
Moreover, the Farmworkers have alleged that Defendant Jeffery Brown was their employer as defined by the FLSA, see 1st Am. Compl ¶ 20, and an agricultural employer as defined by the AWPA, see id. ¶13, and courts have repeatedly held that corporate officers, directors, and managers can be personally liable for the actions undertaken on the corporation's behalf that violate the AWPA and FLSA, see e.g., Avila v. A. Sam & Sons, 856 F. Supp. 763, 769 (W.D.N.Y. 1994); Estevez v. Hayes, No. CV 89-800-PA, 1990 U.S. Dist. LEXIS 20836, at *3–*5 (D. Or. Nov. 9, 1990), including for jurisdictional purposes in their individual capacities, see Recinos-Recinos v. Express Forestry, Inc., Civ. No. 5-1355 Section: I/2, 2005 U.S. Dist. LEXIS 36871, at *9–*14 (E.D. La. Oct. 5, 2005).

[13] Reyes Decl. ¶ 13; Noyola Decl. ¶ 11; Moreno Decl. ¶ 12; Garcia Decl. ¶ 13.

[14] Reyes Decl. ¶ 14; Noyola Decl. ¶ 11; Garcia Decl. ¶ 14.

[15] 1st Am. Compl. ¶ 39.

[16] Reyes Decl. ¶ 14; Noyola Decl. ¶ 12; Rodriguez Decl. ¶ 13; Moreno Decl. ¶ 13; Garcia Decl. ¶ 14.

*Plaintiffs' Response to Motion to*
*Dismiss or Transfer*

gave the Farmworkers their paychecks.[17]  The Farmworkers' pay stubs and W-2s, however, list Defendant Poverty Point Produce as their employer, and these documents all contain Valley addresses for the Farmworkers.[18]

Furthermore, the Grower Defendants admit that they discussed the provision of workers with Defendant Raul Leal from as early as 2001.[19]  The Contractor Defendants state that Defendant Jeffery Brown contacted them in Texas by telephone twice yearly since 2002 to discuss the specific date and location of the work with the Grower Defendants.[20]  Plaintiff Prisco Noyola had been personally recruited by Defendant Raul Leal to work at Defendant Poverty Point Produce for about the five years preceding 2005.[21]  Every year that he worked at Defendant Poverty Point Produce, Defendant Raul Leal transported many South Texas workers to Louisiana with Mr. Noyola to work alongside him,[22] and in at least one year the Grower Defendants provided supplemental automobile insurance for the automobile that the Contractor Defendants used to transport workers from Texas to Louisiana.[23]  Each year Defendant Jesse Leal supervised his field work, and Defendant Jeffery Brown came to the fields to speak with Jesse Leal.[24]  Mr.

---

[17] Reyes Decl. ¶ 15; Noyola Decl. ¶ 13; Rodriguez Decl. ¶ 14; Moreno Decl. ¶ 14; Garcia Decl. ¶ 15.

[18] Reyes Decl. ¶ 15 & Ex. C thereto; Noyola Decl. ¶ 13 & Ex. D thereto; Moreno Decl. ¶ 14 & Ex. C thereto.

[19] See Brown Aff. ¶¶ 5–7.

[20] Leal Aff.

[21] Noyola Decl. ¶ 4.

[22] Id. ¶ 10.

[23] Leal Aff.

[24] Id. ¶ 11.

*Plaintiffs' Response to Motion to*
*Dismiss or Transfer*                                          Page 7 of 33

Noyola lived in Poverty Point Produce housing every year.[25]  In addition, each year Defendant

Jesse Leal kept track of Mr. Noyola's hours and handed him his paychecks.[26]  Mr. Noyola's 2004

W-2 from Defendant Poverty Point Produce gives a Brownsville, Texas address for him, and his

2003 disclosure form lists "Poverty Point Produce Inc." in a heading.[27]  In each year from 2002

through 2006, the written disclosures were written by Defendant Raul Leal under specific

instruction from Defendant Jeffery Brown and were provided to workers in South Texas.[28]

   The experience of Mr. Noyola and the other Farmworkers was corroborated by a USDOL

investigation of Defendant Raul Leal covering the period from October 28, 2000 through October

28, 2002.[29]  This investigation found that Defendant Raul Leal engaged in farm labor contracting

activities on behalf of Defendant Poverty Point Produce.[30]  It further found that these two

Defendants jointly employed at least 74 migrant farmworkers in 2002 and that Defendant Jesse

Leal, under the overall direction of Defendant Jeffery Brown, supervised and oversaw the

migrants' work and maintained their time records.[31]  Most significantly, USDOL found that

Defendant Poverty Point Produce and Defendant Raul Leal were jointly responsible for failing to

--------

[25] Id. ¶ 12.

[26] Id. ¶ 13.

[27] Id. ¶ 7, 13 & Exs. B, D thereto.

[28] Leal Aff.  In addition to the employment agreement, the Contractor Defendants had each worker fill out a Department of Justice Employee Eligibility Verification and Internal Revenue Service Form W-4 while in South Texas at the request of Defendant Jeffery Brown.  Id. & Exs. B, C thereto.  Defendant Jeffery Brown also provided Defendant Raul Leal with a "Confidential Second Injury Fund Questionnaire" to be signed by workers in South Texas.  Id. & Ex. D thereto.

[29] See Stevick Decl. ¶ 3 & Ex. A thereto, Ex. 7 hereto  (Narrative Report at 1).

[30] Id.

[31] Id.

*Plaintiffs' Response to Motion to*
*Dismiss or Transfer*                                                      Page 8 of 33

disclose the terms and conditions of employment to migrants at the time of recruitment, see 29

U.S.C. § 1821(a), and failing to obtain prescribed insurance coverage on vehicles used to

transport workers from their permanent places of residence to Louisiana, see id. §

1841(b)(1)(C)[32]—violations that took place in Texas.  The investigative file also includes

disclosure forms for 2002 similar to those provided to some of the Farmworkers in 2005.[33]

Furthermore, several of the Farmworkers' AWPA claims, including failing to disclose in writing

at the time of their recruitment in Texas all the terms and conditions of employment, providing

unsafe transportation from Texas to Louisiana, and violating the terms of the working

arrangement that was entered into in Texas with Defendants, arise from AWPA violations that

took place, and injuries that the Farmworkers suffered, in whole or in part in Texas.

　　　As will be shown below, these facts establish that the Farmworkers have made out a

*prima facie* case for personal jurisdiction in Texas over the Grower Defendants.

### C.　　Governing Law

　　　The Farmworkers allege in their complaint that this Court has jurisdiction over

Defendants.[34]  Where, as here, the allegation of jurisdiction is based on federal question, rather

than on diversity, Fed. R. Civ. P. 4(e) permits the district court to exercise personal jurisdiction

over any defendant who is subject to the jurisdiction of the courts of the state in which it sits.

Point Landing, Inc. v. Omni Capital Int'l Ltd., 795 F.2d 415, 419 (5th Cir. 1986) (en banc).  The

---

[32] Id. (Narrative Report at 1, 3).  The investigation also found them to be jointly responsible for violating three other provisions of the AWPA.  Id. (Narrative Report at 2–3).

[33] Id.

[34] 1st Am. Compl. ¶¶ 5–7.

*Plaintiffs' Response to Motion to*
*Dismiss or Transfer*　　　　　　　　　　　　　　　　　　　　　Page 9 of 33

Texas long-arm statute authorizes the exercise of personal jurisdiction to the full extent allowed by due process. Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 867 (5th Cir. 2001). Therefore, in Texas, "the determination of personal jurisdiction compresses into a due process assessment." Aviles v. Kunkle, 978 F.2d 201, 204 (5th Cir. 1992).

The essential requirement of due process is "that an individual be given 'fair warning' that a particular type of activity might subject him to the jurisdiction of a foreign forum." Astorga, 962 F. Supp. at 95 (citing Burger King v. Rudzewicz, 471 U.S. 462 (1985)). This kind of warning is satisfied, and personal jurisdiction falls within the limits of due process in the Fifth Circuit, when: 1) the defendant has established "minimum contacts" with the forum state, and 2) the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." Ham v. La Cienega Music Co., 4 F.3d 413, 415 (5th Cir. 1993).

The minimum contacts analysis looks at two possible types of personal jurisdiction: general and specific. Bullion v. Gillespie, 895 F.2d 213, 216 (5th Cir. 1990). Specific jurisdiction arises when the controversy is related to the defendant's contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 411 n.8 (1984). A finding of specific jurisdiction requires that a defendant "purposefully directed his activities at the residents of the forum, and the litigation must result from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum." Aviles, 978 F.2d at 204 (quoting Burger King, 471 U.S. at 474). In fact, as long as the cause of action is related to contact made with the forum state, even a single contact can support specific jurisdiction, and the nonresident defendant himself need not have set foot upon the forum state's soil. Bullion, 895 F.2d at 216.

General jurisdiction, by contrast, exists "when the defendant has engaged in 'continuous and systematic contacts' in the forum." Freudensprung v. Offshore Technical Servs., 379 F.3d 327, 343 (5th Cir. 2004) (citation omitted).  One way courts determine if contacts are sufficiently continuous and systematic is to assess contacts "over a period of years prior to the plaintiff's filing of the complaint." Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569 (2nd Cir. 1996) (providing for discovery of contacts over a six-year period).

Finally, in determining whether the assertion of jurisdiction over a defendant who has minimum contacts with the forum state would comport with traditional notions of "fair play and substantial justice," the court may consider "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the more efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." Burger King, 471 U.S. at 476–77 (citation and internal quotation marks omitted).  In appropriate circumstances, these considerations may be used to establish jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.  Id.

**D.  The Grower Defendants, Through Their Agents, Had Minimum Contacts With Texas Arising Out of or Related to the Farmworkers' Claims Sufficient to Establish Specific Personal Jurisdiction in this Court.**

This Court has specific personal jurisdiction over the Grower Defendants because the Contractor Defendants acted as the Grower Defendants' agents in recruiting the Farmworkers and other workers in Texas and then transporting them from Texas to Louisiana and because these activities resulted in violations of the Farmworkers' rights that occurred in Texas.

1.    The Contractor Defendants Acted as the Grower Defendants' Agents In
      Recruiting Workers in South Texas and Supervising Them in Louisiana.

It is well settled that the conduct of an authorized agent binds the principal on

jurisdictional issues, just as on other issues. See, e.g., Product Promotions v. Cousteau, 495 F.2d

483, 492 (5th Cir. 1992). In fact, when Congress enacted the AWPA, it expressly contemplated

that agricultural employers would be liable for the actions of their agents in recruiting

agricultural workers. See H.R. Rep. No. 885, at 14, 97th Cong. 2d Sess. (1982), reprinted in

1982 U.S.C.C.A.N. 4547, 4560 (stating, in relation to the disclosure requirements of 29 U.S.C. §

1821(a), that "[t]he Committee does not intend that an entity be permitted to insulate itself from

the duty to provide information merely by hiring an agent that communicate [sic] directly with

the migrant workers."). Indeed, courts have routinely held that, based on the activities in the

forum state of their agents, out-of-state employers are subject to personal jurisdiction in the

forum state where migrant farmworkers were recruited. See, e.g., Ochoa v. J.B. Martin & Sons

Farms, Inc., 287 F.3d 1182, 1189–93 (9th Cir. 2002); Sarmiento, 439 F. Supp. 2d at 730; Alonso

v. Agrigenetics, Inc., Civ. No. B-04-005, at 2–4, 8–12 (S.D. Tex. Mar. 8, 2005) (Ex. 9 hereto)

(suggesting without expressly holding that the farm labor contractor acted as the grower's agent);

Moreno v. Milk Train, Inc., 182 F. Supp. 2d 590, 594 (W.D. Tex. 2002); Villegas-Alanis v.

Wurth, No. DR-99-CA-66-FB/DG, 2001 U.S. Dist. LEXIS 23504, at *14–*20 (W.D. Tex. 2001);

Villalobos v. North Carolina Growers Ass'n, 42 F. Supp. 2d 131, 139–141 (D.P.R. 1999);

Martinez v. Murray Employment Agency, Inc., Civ. No. L-98-77, at 4–8 (S.D. Tex. Apr. 23,

1999) (Ex. 10 hereto); Astorga, 962 F. Supp. at 94–95; Hyppolite v. Gorday, No. 89-1843-CN-

NESBITT,1990 U.S. Dist. LEXIS 20967, at *6–*17 (S.D. Fla. 1990); Lozano v. Gonya Farms,

*Plaintiffs' Response to Motion to*
*Dismiss or Transfer*                                          Page 12 of 33

Inc., Civ. No. M-89-119, at 2–4 (S.D. Tex. Apr. 11, 1990) (Ex. 11 hereto); Neizil v. Williams,

543 F. Supp. 899, 904 (M.D. Fla. 1982); Garcia v. Vasquez, 524 F. Supp. 40, 42 (S.D. Tex.

1981); Aguero v. Christopher, 481 F. Supp. 1272, 1274–75 (S.D. Tex. 1980).[35]

> a.   *The Grower Defendants Have Come Forward With No Competent*
> *Evidence to Controvert the Farmworkers' Allegation That the Contractor*
> *Defendants Were the Grower Defendants' Agents*

The only "evidence" proffered by Defendant Poverty Point Produce to contest the

Farmworkers' allegation that the Contractor Defendants acted as their agents is the conclusory

assertion that Defendant Raul "Leal was not employed by Poverty Point and was not Poverty

Point's agent."[36]  Such a conclusory allegation is insufficient to meet its burden to contravene the

Farmworkers' allegations with competent evidence.  See Fix My PC, L.L.C. v. N.F.N. Assocs.,

Inc., 48 F. Supp. 2d 640, 643 (N.D. Tex. 1999); see also Deal v. State Farm County Mut. Ins. Co.

of Texas, 5 F.3d 117, 119 (5th Cir. 1993) (granting summary judgment against employment

discrimination plaintiff whose only "evidence" that a defendant was her employer consisted of

"conclusory assertions"); Salas v. Carpenter, 980 F.2d 299, 304–05 (5th Cir. 1992) (holding that

"conclusory assertions cannot be used in an affidavit on summary judgment").[37]  Because the

_____

[35] Accordingly, the Grower Defendants' reliance on Aviles, 978 F.2d at 201, is perplexing.  That case involved Ohio growers who hired Texas-based farmworkers to work in Ohio.  The growers' "only contact with Texas was one telephone call and one letter which merely advised plaintiffs of the start date of employment which they had already accepted the previous summer in Ohio."  Id. at 205.  The Fifth Circuit concluded that "[t]his limited contact alone is insufficient to allow the exercise of specific personal jurisdiction."  Id.  Agency was not even an issue in Aviles.

[36] Brown Aff. ¶ 6.  Even this careful denial disclaims an employment or agency relationship only "[a]t the time that Leal provided plaintiffs to work at Poverty Point."

[37] Summary judgment decisions provide guidance for the Court because the standard of review for resolving fact disputes on a motion for summary judgment—that all genuine disputes of material fact be resolved in favor of the nonmoving party, Honore v. Douglas, 833 F.2d 565,

Grower Defendants have thus proffered no competent evidence to contravene the Farmworkers'

allegation that the Contractor Defendants acted as the Grower Defendants' agents, the motion to

dismiss must be denied.  See Sarmiento, 439 F. Supp. 2d at 869.

        b.     *The Contractor Defendants Acted as the Grower Defendants' Agents*

Even the limited facts available to the Farmworkers demonstrate that the Contractor

Defendants were the agents of Defendant Poverty Point Produce, Inc.  In Louisiana, "[a]n agent

is one who acts for or in place of another by authority from the latter." McManus v. Southern

United Fire Ins., 801 So. 2d 392, 394 (La. Ct. App. 2001).[38]  Agency may be created by express

appointment or by implied appointment from apparent authority.  In re Oxford Management, Inc.,

4 F.3d 1329, 1336 (5th Cir. 1993).  Apparent or implied authority is a manifestation by the

principal to a third person that the agent is authorized to engage in a particular transaction.

Tedesco v. Gentry Dev., Inc., 540 So. 2d 960, 963 (La. 1989).

An essential element of agency is the principal's right to control the agent.  In re Cajun

Elec. Power Coop., Inc., 230 B.R. 683, 688–89 (M.D. La. Bankr. 1999); see also RESTATEMENT

(SECOND) OF AGENCY § 14N (stating that one "who contracts to act on behalf of another and [is]

subject to the other's control except with respect to his physical conduct" is both "an agent and

also an independent contractor."); id. § 14N, cmt. a ("[M]ost of the persons known as agents . . .

are independent contractors as the term is used in the Restatement of this Subject, since they are

contractors but, although employed to perform services, are not subject to the control or right of

---

567–68 (5th Cir. 1987)—is virtually identical to the standard for resolving such disputes on a
Fed. R. Civ. P. 12(b)(2) motion to dismiss, see Stripling, 234 F.3d at 869.

[38] For purposes of deciding the Grower Defendants' motion, the Farmworkers assume that
Louisiana agency law applies.

control of the principal with respect to their physical conduct in the performance of the

services.").[39]  An implied agency relationship exists "when, from the nature of the principal's

business and the position of the agent within that business, the agent is deemed to have

permission from the principal to undertake certain acts."    In re Oxford Management, 4 F.3d at

1336.  Apparent agency "is frequently established by the conduct and communication of the

parties and the circumstances of the particular case," id., and not by the parties' intent or belief

that they have done so,  RESTATEMENT (SECOND) OF AGENCY § 1, cmt. b.

        The evidence produced by the Farmworkers even at this early stage of litigation easily

demonstrates that the Contractor Defendants had express and apparent authority to act as the

Grower Defendants' agents in relation to all acts and omissions of which the Farmworkers

complain.  The Grower Defendants have since as early as 2002 obtained harvest workers from a

business operated by Defendant Raul Leal and known as "Texas Labor Contractors."[40]  Since

2002, the Grower Defendants have, through the Contractor Defendants, recruited and transported

in Texas scores, if not hundreds, of migrant farmworkers for the Grower Defendants' sweet

potato operation.  Specifically, Defendant Jeffery Brown called Defendant Raul Leal at his

permanent residence in South Texas twice yearly since 2002, instructing Defendant Raul Leal on

how to draft the employment disclosures and on the exact date and location for Defendant Raul

Leal to bring workers from Texas.[41]  Many of the representations made and documents provided

---

[39] An agent subject to the physical control of the principal is a servant or employee.
RESTATEMENT (SECOND) OF AGENCY § 2(1)–(2).  Courts interpreting the law of agency in
Louisiana have relied upon the Restatement.  See, e.g., Tedesco, 540 So.2d at 963.

[40] See Leal Aff.

[41] Id.

*Plaintiffs' Response to Motion to*
*Dismiss or Transfer*                                                                      Page 15 of 33

by the Contractor Defendants to the workers about the general contours of the job—and, in particular, that the workers would be employed by Defendant Poverty Point Produce in Louisiana and would live in grower-provided housing—matched the situation on the ground once the workers arrived. The Farmworkers and other workers were supervised by Defendants Jeffery Brown and Jesse Leal, received Poverty Point Produce paychecks directly from Defendant Jesse Leal, and made complaints about the grower's housing directly to Defendant Jesse Leal, who lived in it with them. Defendant Poverty Point Produce over a period of years knowingly mailed W-2s to the Farmworkers at Texas addresses. A 2002 USDOL investigation of Defendant Raul Leal found, among other things, that he and Defendant Poverty Point Produce were jointly responsible for AWPA violations that took place in Texas. Finally, the Farmworkers have alleged violations of their rights and injuries that took place in Texas. The facts demonstrate that, from the nature of the Grower Defendants' business and the position of the Contractor Defendants within that business, the Contractor Defendants had permission from the growers to recruit and transport the Farmworkers in Texas, which is all that is needed to establish an agency relationship by implication. See In re Oxford Management, 4 F.3d at 1336.[42]

> c.     *The Grower Defendants Ratified the Contractor Defendants' Actions*

Moreover, even if the Court were to conclude that the Contractor Defendants did not have authority to recruit and transport for the Grower Defendants, these actions were ratified by the Grower Defendants. Ratification exists when the person for whom the act was done, with full

---

[42] Indeed, unlike Sarmiento, which the Grower Defendants labor to distinguish, the Farmworkers have provided ample evidence that the Grower Defendants hired, associated with, and had an ongoing relationship with the Contractor Defendants. See 439 F. Supp. 2d at 730.

knowledge of the material facts, expresses an intent to ratify the unauthorized acts.  Webb Carter Constr. Co. v. Louisiana Cent. Bank, 922 F.2d 1197, 1202 (5th Cir. 1991).  The intent to ratify need not be express, but can be implied by the principal's actions—for example, if the principal knowingly accepts the benefits of the unauthorized acts.  See Standard Oil Co. v. Manley, 178 F.2d 136, 138 (5th Cir. 1949).  The Grower Defendants ratified the Contractor Defendants' recruitment and transportation efforts when they accepted the Farmworkers and other agricultural workers for employment in 2005.  Although an agency relationship is not necessary to cause ratification to be effective, see RESTATEMENT SECOND OF AGENCY § 85 (discussing *purporting* to act as an agent as a prerequisite for ratification), for reasons stated above the Contractor Defendants had been the Grower Defendants' agents since at least 2002, when those parties first entered into an agreement to have Defendant Raul Leal recruit workers for the Grower Defendants.  Thus, because the Grower Defendants knowingly accepted the benefit of Defendant Raul Leal's recruitment and transportation efforts pursuant to their agreement for him to provide workers, the Contractor Defendants became the Grower Defendants' agents even if they had not possessed the initial authority to recruit and transport.

> d.  *Even If the Contractor Defendants Were Independent Contractors, Their Actions on Behalf of the Grower Defendants Give This Court Personal Jurisdiction Over the Grower Defendants*

The Grower Defendants' contacts with the Farmworkers and the Contractor Defendants, and in Texas over a multi-year period are sufficient to establish personal jurisdiction even if the Contractor Defendants were independent contractors and were not agents.   The Grower Defendants knew that Defendant Raul Leal does business as Texas Labor Contractors, with his

residence in Weslaco, Texas.[43]  Additionally, the Grower Defendants admit that Defendant Raul

Leal made initial contact with them as early as 2001 and has subsequently communicated with

the Grower Defendants "on more than one occasion."[44]  Defendant Raul Leal corroborates that he

had ongoing contact with the Grower Defendants since 2002, when he started recruiting and

hiring workers from South Texas for them.[45]  However, not only did Defendant Raul Leal meet

with the Grower Defendants in Louisiana, but Defendant Jeffery Brown contacted him in Texas

to instruct him on how to draft the employment arrangements and to provide him with other work

related documents.[46]  The USDOL investigation and the Farmworkers' declarations show that

the Grower Defendants had contracted with Defendant Raul Leal as far back as 2002.[47]  The

Grower Defendants obviously influenced—to say the least—the information provided to the

Farmworkers at recruitment on the disclosure forms.

     As detailed above, some of the Farmworkers' claims and injuries derive from the Grower

Defendants' contacts with Texas.  Many workers recruited by the Contractor Defendants were

from Texas, which was known by the Grower Defendants from the Texas addresses on

paychecks and W-2s.  The facts of the case thus fit within the holding in <u>Alonso</u>, Civ. No. B-04-

0005, at 9–11, where this Court ruled that it could assert personal jurisdiction over an out-of-state

---

[43] <u>See</u> 1st Am. Compl. ¶ 15; Answer of Raul Leal ¶¶ 14–15.

[44] Brown Aff. ¶ 5. "[M]ore than one occasion" is an understatement.

[45] Leal Aff.

[46] <u>Id.</u>  Specifically, Defendant Jeffery Brown sent Defendant Raul Leal a Confidential Second
Injury Fund Questionnaire and asked him to have workers in South Texas fill out Employee
Eligibility Verification and Internal Revenue Service Form W-4's before workers left Texas for
Louisiana.

[47] Stevick Decl. ¶ 3, Ex. A thereto; Noyola Decl. ¶ 4.

grower based on its contacts with Texas, even assuming that the farm labor contractor was an

independent contractor, and not an agent.  For the Grower Defendants to now adopt a posture of

surprise that they have been sued in Texas because "Leal may have recruited persons in Texas to

fulfill his obligation to provide Poverty Point with workers,"[48] is not well taken.

> 2.   The Grower Defendants Violated the Farmworkers' Rights in Texas, and
> the Grower Defendants' Actions Had an Effect on the Farmworkers in
> Texas, Including Causing Injury There to the Farmworkers.

The requirements of due process are satisfied and a court may exercise personal

jurisdiction over a nonresident defendant if that defendant's purposeful contacts with the forum

state are related to the cause of action.  Burger King, 471 U.S. at 472 (quoting Helicopteros, 466

U.S. at 414).  The exercise of personal jurisdiction over the Grower Defendants is warranted

because they violated the Farmworkers' rights in Texas and because the Farmworkers suffered

injury in Texas.  See Aviles, 978 F.2d at 204–05.  The Grower Defendants protest that they never

visited Texas and that the agreement between Defendant Poverty Point Produce and Defendant

Raul Leal was entered into in Louisiana.[49]  Instead of focusing on where the agreement between

the Grower Defendants and Defendant Raul Leal was allegedly formed, however, the exercise of

personal jurisdiction should be decided based on where actions were carried out to satisfy the

agreement.  The Contractor Defendants actively recruited the Farmworkers both in person and

through newspaper ads in South Texas and provided the Farmworkers with written disclosures at

the Contractor Defendants' place of business in Weslaco, Texas, which were signed by the

Farmworkers before leaving Texas, and which disclose Defendant Poverty Point Produce, Inc. as

---

[48] Defs.' Mem. at 9.

[49] Brown Aff. ¶¶ 2–10.

*Plaintiffs' Response to Motion to*
*Dismiss or Transfer*                                    Page 19 of  33

the Louisiana employer.[50]  Thus, through their agents, the Grower Defendants violated the

Farmworkers' AWPA rights in Texas by failing to disclose to the Farmworkers at the time of

recruitment all the terms and conditions of employment required under the AWPA.  Additionally,

the Farmworkers entered into working arrangements with the Grower Defendants while in

Texas.[51]  See, e.g., Astorga, 962 F. Supp. at 95–95 (holding that defendants had sufficient

contacts to establish specific personal jurisdiction because the plaintiffs were recruited and

entered into employment contracts in Texas).  Finally, the Contractor Defendants violated the

Farmworkers' transportation-related rights under the AWPA in Texas.[52]  These violations of the

Farmworkers' AWPA rights caused them injury in Texas.

The foregoing establishes that the Grower Defendants had contacts with Texas sufficient

to support the exercise of personal jurisdiction over them by this Court, a finding that courts have

readily made in migrant farmworker lawsuits involving similar facts.  See e.g., Sarmiento, 439 F.

Supp. 2d at 729, 730; Moreno, 182 F. Supp. at 594–95; Villegas-Alanis, 2001 U.S. Dist

LEXIS 23504, at *16–*18; Martinez, Civ. No. L-98-77, at 1–2, 4–6; Astorga, 962 F. Supp. at

95–96; Hyppolite, 1990 U.S. Dist. LEXIS 20967, at *6–*17; Lozano, Civ. No. -89-119, at 2–4.

### E.   The Grower Defendants Had Minimum Contacts With Texas Sufficient to Establish General Personal Jurisdiction in This Court.

This Court has general personal jurisdiction over the Grower Defendants because they

---

[50] Reyes Decl. ¶¶ 3–8; Noyola Decl. ¶¶ 3–7; Chavez Decl. ¶¶ 3–5; Rodriguez Decl. ¶¶ 3–7; Moreno Decl. ¶¶ 3–5; Garcia Decl. ¶¶ 3–8.

[51] 1st Am. Compl. ¶¶ 28–29; Reyes Decl. ¶¶ 4–8; Noyola Decl. ¶¶ 4–8; Chavez Decl. ¶¶ 4–9; Rodriguez Decl. ¶¶ 4–8; Moreno Decl. ¶¶ 4–8; Garcia Decl. ¶¶ 4–8.

[52] 1st Am. Compl. ¶¶ 24, 26–27, 34–38, 62.

recruited Texas-based workers over the course of many years in a continuous and systematic way to secure labor for each sweet potato season.  Under the Texas long-arm statute, a "nonresident does business in this state if the nonresident . . . recruits Texas residents, directly or through an intermediary located in this state." Tex. Civ. Prac. & Rem. Code § 17.042(3).  Relevant to the issue of general personal jurisdiction are not only the Grower Defendants' present contacts with Texas, but also their contacts with Texas in 2005, when the events giving rise to this lawsuit took place, and for several earlier years.  See Robertson-Ceco, 84 F.3d at 569–70 (holding that examining defendant's contacts with the forum state over a six-year period was appropriate in determining whether general jurisdiction existed).

Since 2002 the Grower Defendants have used Texas intermediaries to recruit and transport in Texas scores, if not hundreds, of what they knew to be Texas-based migrant farmworkers to staff the Grower Defendants' sweet potato operation.  Such purposeful and knowing contacts with Texas over multiple and consecutive years are precisely the kind of "continuous and systematic" contacts with the forum that support the exercise of general personal jurisdiction.  See Freudensprung, 379 F.3d at 343; see also Hyppolite, 1990 U.S. Dist. LEXIS 20967, at *15–*17 (holding that a Georgia grower's recruitment of migrant farmworkers in Florida using Florida-based agents over a four-year period was sufficient to confer personal jurisdiction under the Florida long-arm statute, which permits the exercise of personal jurisdiction only when a defendant's contacts with the forum are continuous and systematic.)

> **F.    The Exercise by This Court of Personal Jurisdiction Over the Grower Defendants Satisfies Constitutional Due Process Requirements Because It Comports with Traditional Notions of Fair Play and Substantial Justice.**

This Court's exercise of jurisdiction over the Grower Defendants would not offend

"traditional notions of fair play and substantial justice." <u>International Shoe Co. v. Washington</u>,

326 U.S. 310, 316 (1945). In assessing the fairness of requiring the Grower Defendants to

litigate this case in Texas, the Court should consider such factors as the relative burden on the

parties, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining

convenient and effective relief, and the interstate judicial system's interest in obtaining the

efficient resolution of controversies. <u>Burger King</u>, 471 U.S. at 476–77. Consideration of these

factors in relation to this litigation buttresses the conclusion that the assertion of personal

jurisdiction by this Court is both fair and reasonable.

First, the state of Texas has expressed substantial interest in adjudicating disputes

involving its migrant workers by specifying in its long-arm statute that a nonresident who recruits

Texas residents directly or through a Texas-based intermediary for employment outside the state

is "doing business" in Texas and is subject to service of process under the Texas long-arm

statute. <u>See</u> Tex. Civ. Prac. & Rem. Code § 17.042(3). This interest is also reflected in the

Texas Workers' Compensation Act, which allows Texas residents recruited or hired in the state

for employment outside Texas to receive compensation for injuries that would be compensable

had they occurred in Texas. <u>See</u> Tex. Lab. Code § 406.071 (2005).

Similarly, the federal courts have repeatedly recognized that migrant farmworkers have a

compelling interest in obtaining convenient and effective relief in the judicial forum of their

permanent place of residence and that they should not lightly be required to pursue claims in a

distant forum. <u>See, e.g.</u>, <u>Sarmiento</u>, 439 F. Supp. 2d at 729; <u>Neizil</u>, 543 F. Supp. at 904–05. The

Farmworkers, who are low-income migrants from Hidalgo and Cameron Counties, Texas, would

be particularly burdened if forced to pursue their claims in Louisiana. Conversely, the Grower

Defendants have provided no evidence other than conclusory assertions to substantiate their statement that it would pose a substantial hardship to litigate in the Southern District of Texas,[53] that they are financially unable to continue to defend this suit in Texas, or that the relative burden faced by them exceeds the relative burden that the indigent Farmworkers would face if forced to litigate this matter in Louisiana.

Finally, important policy concerns also weigh in favor of permitting this lawsuit to go forward in a federal district court sitting in South Texas, the situs of the Farmworkers' recruitment and their permanent place of residence.  States have a manifest interest in providing an effective means of redress for their residents by holding out-of-state actors answerable to claims arising out of their activities in the forum state.  See, e.g., Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 776 (1984); McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957). Indeed, the U.S. Supreme Court itself has acknowledged the interest of states in ensuring that their resident migrant farmworkers are not discriminated against by out-of-state growers.  See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, 458 U.S. 592, 608–09 (1982).

For these reasons, the assertion of personal jurisdiction by this Court over the Grower Defendants is fair, reasonable, and well within the limits imposed by due process.

G.     **If the Court Does Not Deny the Grower Defendants' Motion Based on the Present Record, the Court Should Defer Ruling on the Motion Until the Farmworkers Have Conducted Jurisdictional Discovery**.

In the alternative, if the Court is not persuaded that the Farmworkers have made out a *prima facie* case of personal jurisdiction, they request that they be permitted to conduct

---

[53] Brown Aff. ¶ 11.

*Plaintiffs' Response to Motion to Dismiss or Transfer*                                    Page 23 of 33

jurisdictional discovery.  The Fifth Circuit has held that it is an abuse of discretion for a district

court not to permit jurisdictional discovery on non-frivolous claims of personal jurisdiction.  See,

e.g., Wyatt v. Kaplan, 686 F.2d 276, 283 (5th Cir. 1982) ("In an appropriate case, we will not

hesitate to reverse a dismissal for lack of personal jurisdiction, on the ground that the plaintiff

was improperly denied discovery."); Blanco v. Carigulf Lines, 632 F.2d 656, 658 (5th Cir. 1980)

(reversing district court's dismissal, based solely on defendant's affidavits, for want of personal

jurisdiction where defendant had not yet responded to interrogatories directed to developing fully

the jurisdictional facts); Skidmore v. Syntex Labs., Inc., 529 F.2d 1244, 1246–49 (5th Cir. 1976)

(holding that district court abused its discretion in not allowing plaintiffs to engage in further

discovery, even after plaintiffs had several months to conduct discovery and had employed 184

interrogatories); see also Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3rd Cir. 2003)

(holding that "courts are to assist the plaintiff by allowing jurisdictional discovery unless the

plaintiff's claim is clearly frivolous") (citation and internal quotation marks omitted).  The denial

of jurisdictional discovery has typically been upheld only when the plaintiff did not fully avail

himself of the opportunity to engage in the proffered discovery, Singletary v. B.R.X., Inc., 828

F.2d 1135, 1137–38 (5th Cir. 1987), where lack of personal jurisdiction is clear and discovery

could not add any significant facts, Wyatt, 686 F.2d at 284, or where the plaintiff had engaged in

extensive relevant discovery in prior litigation between the parties, Villar v. Crowley Maritime

Corp., 990 F.2d 1489, 1495 (5th Cir. 1993).  None of these exceptions applies here.

 Permitting jurisdictional discovery is particularly important where, as here, discovery will

likely lead to evidence relevant to the Farmworkers' jurisdictional claims.  Defendant Jeffery

Brown conclusorily avers that the Grower Defendants perform no business and have not

contacted anyone in Texas in connection with any "business" involving Defendant Poverty Point Produce within the state of Texas.[54]  What Brown regards as "performing business" he does not explain. Discovery concerning the relationship between the Grower Defendants and the Contractor Defendants may reveal additional details about recruitment and transportation of workers in Texas by the Contractor Defendants on the Grower Defendants' behalf.  Discovery into Defendants' pay and personnel records may also uncover identities of additional workers whom Defendants recruited and transported in Texas through the Contractor Defendants.  In any event, the Farmworkers should not be forced to allow the statements of the Brown Affidavit to go untested.  Finally, the Farmworkers have had no opportunity to discover whether general jurisdiction exists over the Grower Defendants due to any other continuous and systematic contacts with Texas, such as relationships with Texas-based suppliers and distributors, sales in Texas, or marketing directed at Texas consumers—matters about which the Grower Defendants have proffered no evidence other than a denial of having engaged in "business" (whatever they may mean by that term) in Texas.  Evidence relating to these issues is principally in the knowledge or possession of Defendants.  Accordingly, the Farmworkers' request for jurisdictional discovery should be granted, if the motion to dismiss is not now denied.

## III.    Argument: Venue Should Not Be Transferred

### A.    Standard of Review and Governing Law

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

---

[54] Brown Aff. ¶ 10.

*Plaintiffs' Response to Motion to Dismiss or Transfer*

where it might have been brought." This section "provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." Van Dusen v. Barrack, 376 U.S. 612, 645–46 (1964). A plaintiff's choice of forum is "highly esteemed." Aguero, 481 F. Supp. at 1275 (quoting Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966)). A defendant carries a heavy burden in showing that the balance of convenience and justice weighs in favor of transfer, Gurrola v. Griffin & Brand Sales Agency, Inc., 524 F. Supp. 115, 117 (S.D. Tex. 1980), and a plaintiff's "choice of forum will not be disturbed unless the court finds the balance to be strongly in favor of the Defendants." Islas v. Adams, Civ. No. M-98-137, 1999 U.S. Dist. LEXIS 14896, at *4 (S.D. Tex. May 7, 1999).

The Court must consider "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Peteet v. Dow Chem. Co., 868 F.2d 1428, 1436 (5th Cir. 1989) (citation and internal quotation marks omitted). This determination turns on the analysis of a number of private and public interest factors:

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the costs of attendance of willing witnesses; and (4) all other practical problems that make trial of a case, easy, expeditious and inexpensive. The public concerns include: (1) administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004) (internal citations omitted).

The Grower Defendants have not met their heavy burden of showing that it would be more convenient for all of the parties and witnesses and that it would serve the interest of justice

to transfer this case to the U.S. District Court for the Western District of Louisiana.

**B.     Convenience Factors Weigh Heavily Against Transfer**

       1.     <u>Private Concerns</u>

           a.     *The Relative Ease of Access to Sources of Proof*

The Grower Defendants state that "Poverty Point would be forced to transport all of its documentary evidence from offices and job site location in Louisiana to Texas."[55]  But in this lawsuit (and unlike a major commercial dispute), the records are hardly so voluminous that Defendants would be unable to easily bring them to the Southern District of Texas.  <u>See</u> <u>Sarmiento</u>, 439 F. Supp. 2d at 732; <u>Eliserio v. Floydada Hous. Auth.</u>, 388 F. Supp. 2d 774, 776 (S.D. Tex. 2005) ("when considering a motion to transfer venue, the location of books and other records is usually given little weight, unless the documents are so voluminous that their transport is a major undertaking") (quoting <u>Moreno</u>, 182 F. Supp. 2d at 598).  Here the Farmworkers' employment records would consist largely of their pay stubs and timesheets for the few weeks that they worked at Defendant Poverty Point Produce, Inc. in the summer of 2005—and even these records for *all* of the Grower Defendants' employees would not be too voluminous, particularly because the FLSA claim that has been filed as an opt-in collective action pertains only to unlawful transportation deductions made in each worker's first and/or second paycheck.[56]

           b.     *Securing Attendance and Costs of Witnesses*

A party moving to transfer venue for the convenience of the parties and witnesses "must

---

[55] Defs.' Mem. at 14.

[56] <u>See</u> Stevick Decl. ¶ 5.  It is unlikely that written discovery in this case could exceed a couple of banker's boxes of documents.

*Plaintiffs' Response to Motion to*
*Dismiss or Transfer*                                               Page 27 of  33

do more than make a general allegation that certain key witnesses are needed.  The movant must specifically identify the key witnesses and outline the substance of their testimony."  <u>Dupre v.</u> <u>Spanier Marine Corp.</u>, 810 F. Supp. 823, 825 (S.D. Tex. 1993) (citation omitted).  The Grower Defendants do not specifically identify any non-party witnesses.  Instead, the Grower Defendants flatly declare that "most, if not all, of the primary witnesses also reside and/or work in Louisiana."[57]  This statement is not accurate and must be given no weight.  The Farmworkers, on the other hand, have indicated that several vans full of workers left from Raul Leal's car dealership in South Texas to take Texas residents to work for the Grower Defendants in Louisiana.[58]  The Farmworkers have also identified by name non-party witnesses to their recruitment and transportation who live in the Southern District of Texas.[59]  In addition to ignoring the scores of non-party witnesses who live in South Texas, the Grower Defendants fail to mention that the Contractor Defendants also all reside in South Texas.

Furthermore, to the extent that any mystery non-party witnesses whom the growers might call are the Grower Defendants' employees, although the cost of travel to the Southern District of Texas is an inconvenience, the convenience of the defendant's employees is "entitled to less weight" since the defendant "will be able to compel their testimony at trial."  <u>Continental</u> <u>Airlines, Inc. v. American Airlines, Inc.</u>, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992).

Most importantly, the Farmworkers have produced evidence that transferring this case to

---

[57] Defs.' Mem. at 14.

[58] Reyes Decl. ¶¶ 10–11; Noyola Decl. ¶ 10; Chavez Decl. ¶ 11; Rodriguez Decl. ¶ 11; Moreno Decl. ¶ 10; Garcia Decl. ¶ 12.

[59] Stevick Decl. ¶ 4.

*Plaintiffs' Response to Motion to*
*Dismiss or Transfer*                                           

the Western District of Louisiana would be an extreme hardship for them.  Like most migrant

farmworkers, they are indigent.[60]  It is reasonable to infer that the non-party worker-witnesses

whom the Farmworkers have identified and who also live in the Southern District of Texas are

poor.  See Aguero, 481 F. Supp. at 1275 ("It is well known that many migrant laborers do not

have the financial resources necessary to prosecute a claim hundreds of miles from home.").

Additionally, the Farmworkers are migrants who work temporary jobs.[61]  To require them to

travel to Louisiana might result in the loss of employment elsewhere, causing financial hardship.

c.     <em>All Other Practical Problems</em>

The Grower Defendants maintain that this action should be transferred because "all of the

events and actions related to this action" occurred in Louisiana.[62]  This statement is false because

the Farmworkers entered into working arrangements with Defendants while in Texas and several

of the violations of the AWPA suffered by the Farmworkers occurred in Texas. Accordingly, this

factor weighs in favor of this Court as the most convenient venue.

2.     <u>Public Interest Concerns</u>

The Grower Defendants do not discuss any public interest concerns in their motion.  A

brief look at them shows that venue is most convenient in the Southern District of Texas.

---

[60] Reyes Decl. ¶ 17; Noyola Decl. ¶ 16; Chavez Decl. ¶ 14; Rodriguez Decl. ¶ 16; Moreno Decl. ¶ 16; Garcia Decl. ¶ 17.  USDOL reports that the median U.S. farmworker family income is between $12,500 and $14,499 annually and that 30% of all farmworker families have incomes below the poverty guidelines.  USDOL, "National Agricultural Workers Survey 2001-2002" (March 2005) available at http://www.doleta.gov/agworker/report9/naws_rpt9.pdf, at 47.

[61] Reyes Decl. ¶ 17; Noyola Decl. ¶ 16; Rodriguez Decl. ¶ 16; Moreno Decl. ¶ 16; Garcia Decl. ¶ 17.

[62] Defs.' Mem. at 14.

a.    *The Local Interest in Having Localized Interests Decided at Home*

The economic self-sufficiency of migrant farmworkers is a primary concern of the

residents of the Valley because Valley counties are among the poorest in the United States.[63]  In

this case, the Farmworkers, who are Valley residents, complain that Defendants violated in Texas

the Farmworkers' rights under the AWPA.  Such complaints are of particular interest in this

community where a large segment of the population derives its income from agricultural work

and where poverty is widespread.  See, e.g., Alonso, Civ. No. B-04-005, at 17 ("South Texas has

a paramount interest in providing its citizens convenient and effective relief against nonresident

corporations that recruit its resident migrant workers.").

b.    *The Familiarity of the Forum with the Law That Will Govern the Case*

This Court is far more familiar with the AWPA than is the U.S. District Court for the

Western District of Louisiana.  Large numbers of migrant farmworkers reside in Hidalgo County,

and counsel for the Farmworkers have repeatedly litigated cases involving the employment

claims of migrant farmworker claims in the Southern District of Texas.

c.    *Conflict of Laws or the Application of Foreign Law*

This factor weighs against transfer because this Court and a Louisiana court are equally

---

[63] On August 31, 2005, CNN Money reported that Hidalgo and Cameron Counties were the two poorest American counties with a population of 250,000 or more people. "America's Richest and Poorest Places" http://money.cnn.com/2005/08/30/pf/city_county_rankings/. The 2004 American Community Survey by the U.S. Census Bureau reports that 36.1% of families and 43.6% of individuals in Hidalgo County live below the poverty level compared to the national average of 10.1% of families and 13.1% of individuals living below the poverty level.  See http://factfinder.census.gov (search for Hidalgo County, Texas and information will be displayed under the heading Economic Characteristics).

*Plaintiffs' Response to Motion to*
*Dismiss or Transfer*                                                      Page 30 of  33

able to consider and apply any conflicts-of-law issues that may arise.

### C.    In the Interest of Justice, This Case Should Remain in This Court

In addition to weighing and considering the convenience factors discussed above, the

Court must ensure that a transfer would be "in the interest of justice." 28 U.S.C. § 1404(a).

Precedent and the evidence show that the interests of justice require that the Farmworkers'

choice of forum for this suit be honored.  A transfer would unduly constrain the Farmworkers'

access to justice and undermine Congressional efforts to promote justice for farmworkers.

The Farmworkers have shown that they are poor migrants who reside in the Southern

District of Texas.  They have shown that, due to their lack of financial resources, it would be

extremely inconvenient for them to litigate this case in Louisiana.  For this reason, the

Farmworkers filed this case in the Southern District of Texas pursuant to the AWPA special

venue provision.  See 29 U.S.C. § 1854(a).

In enacting this special venue provision, Congress expanded the venue choices available

to migrant farmworkers and codified the significant policy interest in ensuring that migrant

farmworkers have access to the judicial system.  See Gurrola., 524 F. Supp. at 117 (holding, even

before Congress had enacted the AWPA with its special venue provision, that "it is apparent that

public interest, as evidenced by congressional action in this area, dictates that the court ensure

that the Farmworkers' legal remedies are not diluted by an indiscriminate transfer that would

impose serious financial burdens upon them.").  In short, "[p]ersons whose occupation is, by

definition, migrant would be placed at considerable disadvantage in redressing their rights if they

were forced to return to the judicial district in which the offending party resides."  Stewart, 730

F. Supp. at 1097 n.1.  Requiring the Farmworkers, who are poor, to prosecute their claims in the

Western District of Louisiana would frustrate the Congressional efforts to ensure migrant farmworkers' access to the judicial system. See Aguero, 481 F. Supp. at 1275. Thus, although the Grower Defendants claim that Defendant Poverty Point Produce is a small business and would incur additional expense by having to litigate in Texas, the Farmworkers are genuinely indigent and would suffer even greater loss.

**IV.    Conclusion**

For reasons stated, the Farmworkers have carried their burden of making out a *prima facie* case of specific and general personal jurisdiction over the Grower Defendants by this Court. The Grower Defendants' motion to dismiss for absence of personal jurisdiction and improper venue should be denied forthwith. If, however, the motion is not now denied, the Farmworkers requests that the Court defer ruling until they have had sufficient time to conduct discovery directed to the jurisdictional issue. Furthermore, the Grower Defendants have not and cannot meet their heavy burden of proving that a transfer of venue would be substantially more convenient for the parties and would serve the interest of justice. The motion to change venue should therefore also be denied. A proposed order denying the motion is attached.

Respectfully submitted,

S    Douglas L. Stevick
Douglas L. Stevick
Attorney-in-Charge for Plaintiffs
Texas Bar No. 00797498
Southern District of Texas No. 21358
SOUTHERN MIGRANT LEGAL SERVICES
A PROJECT OF TEXAS RIOGRANDE LEGAL
AID, INC.
101 Church Street, Suite 325
Nashville, Tennessee 37201
Telephone: (615) 251-3244

Facsimile: (615) 251-3347

Kathryn Youker
Texas Bar No. 24014928
Southern District of Texas No. 33655
TEXAS RIOGRANDE LEGAL AID, INC.
300 South Texas Boulevard
Weslaco, Texas 78596
Telephone: (956) 447-4800
Facsimile: (956) 968-8823

Edward B. Cloutman, III
Texas Bar No. 04411000
LAW OFFICES OF EDWARD B. CLOUTMAN, III
3301 Elm Street
Dallas, Texas 75226
Telephone: (214) 939-9222
Facsimile: (214) 939-9229

### Certificate of Service

I hereby certify that on this the 1st day of February, 2007, I caused a true and correct copy of the foregoing to be electronically served upon the following counsel of record for Defendants, via the Court's electronic case-filing system:

COUNSEL FOR DEFENDANTS POVERTY POINT PRODUCE, INC. and JEFFERY BROWN:

> Thomas Kiggans, Esq.
> Phelps Dunbar LLP
> 445 N. Boulevard, Ste. 701
> Baton Rouge, LA 70802

COUNSEL FOR DEFENDANTS RAUL LEAL, JESSE LEAL, AND PIEDAD LEAL:

> Victor Rodriguez, Jr.
> Ellis, Koeneke & Ramirez, L.L.P.
> 1101 Chicago
> McAllen, TX 78501-4822

S___Douglas L. Stevick____

*Plaintiffs' Response to Motion to*
*Dismiss or Transfer*                                                    Page 33 of 33

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     Argument: This Court Has Personal Jurisdiction Over the Grower Defendants . . . . . . . . 3

        A.      Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.      Statement of Relevant Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        C.      Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        D.      The Grower Defendants, Through Their Agents, Had Minimum Contacts With
                Texas Arising Out of or Related to the Farmworkers' Claims Sufficient to
                Establish Specific Personal Jurisdiction in this Court . . . . . . . . . . . . . . . . . . . . . 11

                1.      The Contractor Defendants Acted as the Grower Defendants' Agents In
                        Recruiting Workers in South Texas and Supervising Them in Louisiana .12

                        a.      The Grower Defendants Have Come Forward With No Competent
                                Evidence to Controvert the Farmworkers' Allegation That the
                                Contractor Defendants Were the Grower Defendants' Agents . . . 13

                        b.      The Contractor Defendants Acted as the Grower Defendants'
                                Agents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                        c.      The Grower Defendants Ratified the Contractor Defendants'
                                Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                        d.      Even If the Contractor Defendants Were Independent Contractors,
                                Their Actions on Behalf of the Grower Defendants Give This
                                Court Personal Jurisdiction Over the Grower Defendants . . . . . . 17

                2.      The Grower Defendants Violated the Farmworkers' Rights in Texas, and
                        the Grower Defendants' Actions Had an Effect on the Farmworkers in
                        Texas, Including Causing Injury There to the Farmworkers . . . . . . . . . . 19

        E.      The Grower Defendants Had Minimum Contacts With Texas Sufficient to
                Establish General Personal Jurisdiction in This Court . . . . . . . . . . . . . . . . . . . . 20

i

F. The Exercise by this Court of Personal Jurisdiction Over the Grower Defendants Satisfies Constitutional Due Process Requirements Because it Comports with Traditional Notions of Fair Play and Substantial Justice. . . . . . . . . . . . . . . . . . . 21

G. If the Court Does Not Deny the Grower Defendants' Motion Based on the Present Record, the Court Should Defer Ruling on the Motion Until the Farmworkers Have Conducted Jurisdictional Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

III. Argument: Venue Should Not be Transferred . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

 A. Standard of Review and Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

 B. Convenience Factors Weigh Heavily Against Transfer . . . . . . . . . . . . . . . . . .. . . 27

  1. *Private Concerns* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

   a. The Relative Ease of Access to Sources of Proof . . . . . . . . . . . 27

   b. Securing Attendance and Costs of Witnesses . . . . . . . . . . . . . . .27

   c. All Other Practical Problems . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

  2. *Public Interest Concerns* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

   a. The Local Interest in Having Localized Interests Decided at Home . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

   b. The Familiarity of the Forum with the Law That Will Govern the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

   c. Conflict of Laws of the Application of Foreign Law . . . . . . . . . 30

 C. In the Interest of Justice, This Case Should Remain in This Court . . . . . . . . . . 31

IV. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

ii

## TABLE OF AUTHORITIES

**CASES**                                                                **Page**

Aguero v. Christopher, 481 F. Supp. 1272, 1274-75 (S.D. Tex. 1980). . . . . . . . . . 13, 26, 29, 32

Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, 458 U.S. 592,
    608-09 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Alonso v. Agrigenetics, Inc., Civ. No. B-04-005, at 2-4, 8-12
    (S.D. Tex. Mar. 8, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 18, 30

Astorga v. Connleaf, Inc., 962 F. Supp. 93, 95 (W.D. Tex. 1996) . . . . . . . . . . . . 2, 10, 12, 20

Avila v. A. Sam & Sons, 856 F. Supp. 763, 769 (W.D.N.Y. 1994) . . . . . . . . . . . 6

Aviles v. Kunkle, 978 F.2d 201, 204(5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . 10, 13, 19

Blanco v. Carigulf Lines, 632 F.2d 656, 658 (5th Cir. 1980) . . . . . . . . . . . . . . . . 24

Bullion v. Gillespie, 895 F.2d 213, 216 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . 10

Burger King v. Rudzewicz, 471 U.S. 462 (1985). . . . . . . . . . . . . . . . . . . . . . . . . .10, 11, 19 , 22


Central Freight Lines, Inc. v. APA Transp. Corp., 322 F.3d 376, 380
    (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Continental Airlines, Inc. v. American Airlines, Inc., 805 F. Supp. 1392, 1397
    (S.D. Tex. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Deal v. State Farm County Mut. Ins. Co. of Texas, 5 F.3d 117, 119
    (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Dupre v. Spanier Marine Corp., 810 F. Supp. 823, 825 (S. D. Tex. 1993) . . . . . . 28

Eliserio v. Floydada Hous. Auth., 388 F. Supp. 2d 774, 776 (S.D. Tex. 2005) . . . . 27

Estevez v. Hayes, No. CV 89-800-PA, 1990 U.S. Dist. LEXIS 20836,
    at *3–*5 (D. Or. Nov. 9, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Felch v. Transportes Lar-Mex SA DE CV, 92 F.3d 320, 326 (5th Cir. 1996) . . . . . .3

Fix My PC, L.L.C. v. N.F.N. Assocs., Inc., 48 F. Supp. 2d 640, 643
        (N.D. Tex. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Freudensprung v. Offshore Technical Servs., 379 F.3d 327, 343 (5th Cir. 2004) . . 11, 21

Garcia v. Vasquez, 524 F. Supp. 40, 42 (S.D. Tex. 1981) . . . . . . . . . . . . . . . . . . . . 13

Gurrola v. Griffin & Brand Sales Agency, Inc., 524 F. Supp. 115, 117
        (S.D. Tex. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 31

Ham v. La Cienega Music Co., 4 F.3d 413, 415 (5th Cir. 1993) . . . . . . . . . . . . . . 10

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 411 n.8 (1984) .10, 19

Honore v. Douglas, 833 F.2d 565, 567–68 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . 13

Hyppolite v. Gorday, No. 89-1843-CN-NESBITT,1990 U.S. Dist.
        LEXIS 20967, at *6-17 (S.D. Fla. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20, 21

In re Cajun Elec. Power Coop., Inc., 230 B.R. 683, 688–89
        (M.D. La. Bankr. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

In re Oxford Management, Inc., 4 F.3d 1329, 1336 (5th Cir. 1993) . . . . . . . . . . . .14, 15, 16

In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . 26

International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) . . . . . . . . . . . . . . 22

Islas v. Adams, Civ. No. M-98-137, 1999 U.S. Dist.
        LEXIS 14896, at *4 (S.D. Tex. May 7, 1999) . . . . . . . . . . . . . . . . . . . . . . . 26

Jobe v. ATR Mktg., Inc., 87 F.3d 751, 753 (5th Cir. 1996) . . . . . . . . . . . . . . . . . .  3

Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 776 (1984) . . . . . . . . . . . . . . . . . 23

Lozano v. Gonya Farms, Inc., Civ. No. M-89-119, at 2-4
        (S.D. Tex. Apr. 11, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20

Martinez v. Murray Employment Agency, Inc,. Civ. No. L-98-77, at 4-8
        (S.D. Tex. Apr. 23, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20

McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957) . . . . . . . . . . . . . . .23

McManus v. Southern United Fire Ins., 801 So. 2d 392, 394 (La. Ct. App. 2001) . . 14

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569
 (2nd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 21

Moreno v. Milk Train, Inc., 182 F. Supp. 2d 590, 594 (W.D. Tex. 2002) . . . . . . . . 12, 20, 27

Neizil v. Williams, 543 F. Supp. 899, 904 (M.D. Fla. 1982) . . . . . . . . . . . . . . . . . 13, 22

Ochoa v. J.B. Martin & Sons Farms, Inc., 287 F.3d 1182, 1189-93 (9th Cir. 2002) . 12····

Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 867
 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Peteet v. Dow Chem. Co., 868 F. 2d 1428, 1436 (5th Cir. 1989) . . . . . . . . . . . . . . 26

Point Landing, Inc. v. Omni Capital Int'l Ltd., 795 F.2d 415, 419
 (5th Cir. 1986) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Product Promotions v. Cousteau, 495 F.2d 483, 492 (5th Cir. 1992) . . . . . . . . . . . 12

Recinos-Recinos v. Express Forestry, Inc., Civ. No. 5-1355 Section: I/2,
 2005 U.S. Dist. LEXIS 36871, at *9–*14 (E.D. La. Oct. 5, 2005) . . . . . . . . . 6

Salas v. Carpenter, 980 F.2d 299, 304–05 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . 13

Sarmiento v. Producer's Gin of Waterproof, Inc., 439 F. Supp. 2d 725, 728
 (S.D. Texas 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12, 14, 16
                              20, 22, 27

Singletary v. B.R.X., Inc., 828 F.2d 1135, 1137–38 (5th Cir. 1987) . . . . . . . . . . . . 24

Skidmore v. Syntex Labs., Inc., 529 F.2d 1244, 1246–49 (5th Cir. 1976) . . . . . . . . 24

Standard Oil Co. v. Manley, 178 F.2d 136, 138 (5th Cir. 1949) . . . . . . . . . . . . . . . . 17

Stewart v. Woods, 730 F. Supp. 1096, 1097 (M.D. Fla. 1990) . . . . . . . . . . . . . . . . 2, 31

Stripling v. Jordan Prod. Co., 234 F.3d 863, 869 & n.8 (5th Cir. 2000) . . . . . . . . . .3, 4, 6, 14

Tedesco v. Gentry Dev., Inc., 540 So. 2d 960, 963 (La. 1989) . . . . . . . . . . . . . . . .14, 15

Time, Inc. v. Manning, 366 F. 2d 690, 698 (5th Cir. 1966) . . . . . . . . . . . . . . . . . . . 26

<u>Toys "R" Us, Inc. v. Step Two, S.A.</u>, 318 F.3d 446, 456 (3rd Cir. 2003) . . . . . . . . . 24

<u>Van Dusen v. Barrack</u>, 376 U.S. 612, 645-46 (1964) . . . . . . . . . . . . . . . . . . . . . . . .26

<u>Villalobos v. North Carolina Growers Ass'n</u>, 42 F. Supp. 2d 131, 139-141
    (D.P.R. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Villar v. Crowley Maritime Corp.</u>, 990 F.2d 1489, 1495 (5th Cir. 1993) . . . . . . . . .24

<u>Villegas-Alanis v. Wurth</u>, No. DR-99-CA-66-FB/DG, 2001 U.S. Dist.
    LEXIS 23504, at *14-20 (W.D. Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . .12, 20

<u>Webb Carter Constr. Co. v. Louisiana Cent. Bank</u>, 922 F.2d 1197, 1202
    (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Wyatt v. Kaplan</u>, 686 F.2d 276, 283 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . .24

**STATUTES AND RULES**

Fed. R. Civ. P. 4(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Fed. R. Civ. P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 14

Tex. Civ. Prac. & Rem. Code § 17.042(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Tex. Lab. Code § 406.071 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 31

29 U.S.C. §§ 201 <u>et seq.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

29 U.S.C. §§ 1801 <u>et seq.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

29 U.S.C. § 1821(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

29 U.S.C. § 1841(b)(1)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

29 U.S.C. § 1854(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 31

**MISCELLANEOUS**

H.R. Rep. No. 885, at 14, 97th Cong. 2d Sess. (1982), <u>reprinted in</u> 1982

U.S.C.C.A.N. 4547, 4560 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

RESTATEMENT (SECOND) OF AGENCY § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

RESTATEMENT (SECOND) OF AGENCY § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

RESTATEMENT SECOND OF AGENCY § 85 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

RESTATEMENT (SECOND) OF AGENCY § 14N . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14